RICKY ALAN GROSENICK,

    **Plaintiff,**

    v.
                                **Case No. 21-CV-1276-SCD**

COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    **Defendant.**

## DECISION AND ORDER

Ricky Alan Grosenick applied for social security disability benefits based on hearing issues, depression, and anxiety. The Commissioner of the Social Security Administration denied the application, and, after a hearing, an administrative law judge found Grosenick not disabled under the Social Security Act. Grosenick seeks judicial review of that decision, arguing that the ALJ erred in assessing certain opinion evidence in the record. I agree that the ALJ reversibly erred in evaluating the prior administrative medical findings of the state-agency reviewing physicians. I will therefore reverse the decision denying Grosenick disability benefits and remand the matter for further proceedings.

## BACKGROUND

Grosenick was born in 1962 and grew up working on his family farm in Lebanon, Wisconsin. R. 41, 406.[1] He started driving a tractor and using farm equipment at a very young age. After tenth grade, Grosenick dropped out of school to work on the farm full-time. He

---

[1] The transcript is filed on the docket at ECF No. 10-1 to 10-4.

later got a second job working for the City of Watertown street department. His duties with the street department included running a woodchipper, leaf sucker, concrete saw, air hammer, lawn mower, forklift, skid loader, and plow truck. R. 43, 317, 405.

In 2006, Grosenick went to the emergency department complaining about constant tenderness in both ears for the last several years. R. 398. He said he worked with a woodchipper and, despite wearing hearing protection, he always had ringing in his ear, especially after a day at work. Grosenick did not have any hearing loss at the time, but he did complain about hypersensitivity to loud noises. He was assessed with bilateral tinnitus (ringing in ears) with hyperacusis (sensitivity to sound) secondary to loud noise exposure and recommended to undergo audiometric testing. R. 399.

A few months later, Grosenick presented to an ear specialist for the recommended testing. *See* R. 401–03. Grosenick told the specialist he had extensive noise exposure since childhood and that he learned to cope with the tinnitus. However, he said the condition increasingly became a problem over the last five years, which he attributed to working with a woodchipper for several hours a day. Grosenick also reported exacerbation of his symptoms when working on a tractor or bulldozer. The audiogram revealed normal to borderline normal hearing with a mild high frequency hearing loss in the left compared to the right. The ear specialist recommended behavioral management and started Grosenick on several medications.

The following year, Grosenick quit his job working for the city because of worsening tinnitus. *See* R. 52, 316, 406, 632, 784. He continued farming but struggled with his increased sensitivity to noise, cold weather, and drops in barometric pressure. R. 405. In 2012, Grosenick began feeling more depressed dealing with his physical condition. He was

2

diagnosed with major depressive disorder and generalized anxiety disorder and prescribed psychotropic medications. R. 405–09. Grosenick says he stopped farming in 2015 because he couldn't handle the noise anymore. R. 51–52, 316–19, 786. He hired out the farming work for a few years before renting the farm completely. *See* R. 42–45, 319, 787–89.

In June 2018, Grosenick applied for disability insurance benefits under Title II of the Social Security Act, claiming that he became disabled and unable to work in July 2015 due to hearing issues, depression, and anxiety. *See* R. 14, 231–44. His date last insured is December 31, 2017. R. 16. Grosenick asserted that his impairments significantly affected his ability to talk, hear, remember, complete tasks, concentrate, understand, and follow instructions. R. 333. Grosenick also asserted significant limitations in his daily activities. *See* R. 328–35. He reported not being able to tolerate noise that others can (even with earplugs in), not leaving the house some days, not sleeping well, and having difficulty maintaining attention and concentration. Grosenick did not have any issues with personal care, cooked his own meals, performed housework and yard work (like tending to a flower garden, raking leaves, spraying weeds, and painting), drove, shopped in stores every other week, and was able to manage his personal finances. He said his only hobby was farming, which he couldn't do anymore because of his condition. He also said he didn't socialize much outside his home.

The state agency charged with reviewing the application on behalf of the Social Security Administration denied Grosenick's claim initially and upon his request for reconsideration. *See* R. 63–98. The medical consultants who reviewed Grosenick's records found that he had severe but not disabling ear issues, depression, and anxiety. R. 71–72, 89–91. The reviewing physicians found that Grosenick could perform medium exertional work if he avoided all exposure to noise. R. 74–75 ("Clmt reports symptoms worsen with exposure

3

to Noise. Noise is therefore restricted to None."), 92–94 (same). The reviewing psychologists found that Grosenick had a moderate limitation in interacting with others and mild limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing himself. R. 71–72, 75–77, 89–90, 94–96.

After the state agency denied his application, Grosenick had a hearing with an ALJ employed by the Social Security Administration. *See* R. 36–62. Grosenick told the ALJ that he was unable to work due to tinnitus hyperacusis. R. 45–47. He reported hearing a high-pitched screeching noise in his head every minute of every day that was worse when around noise, from physical exertion, and in cold weather. He said that medication helped suppress the ringing, but it didn't make it go away. Also, the medication did not prevent the triggers from increasing his symptoms and seemed to not be helping as much as it used to, even at the maximum dosage. Grosenick told the ALJ he also suffered from fatigue, major depression, and anxiety, and he frequently thought about suicide. R. 47–48.

The ALJ denied Grosenick's application in June 2019. *See* R. 11–32. A few months later, the Social Security Administration's Appeals Council denied Grosenick's request for review, R. 2–7, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016). Grosenick sought judicial review, and the district court remanded the matter to the Commissioner pursuant to a stipulation. *See* R. 807–19. The Appeals Council vacated the 2019 decision and remanded the matter to the ALJ for rehearing. R. 820–24.

In September 2020, the ALJ held another evidentiary hearing. *See* R. 762–74. Grosenick testified that, prior to December 2017, his tinnitus symptoms increased with lifting,

4

vibrations, and all sounds (especially high-pitched ones). R. 791–92. During exacerbations, it sounded like jet engines roaring and felt like a dentist drilling a hole in his head. The exacerbations also caused severe headaches. A vocational expert testified that a hypothetical person with Grosenick's vocational profile (i.e., fifty-five years old as of his date last insured, a limited education, and past work as a municipal maintenance worker and field crop farm worker) could work as a production inspector, a dishwasher, and a hand packager if he was limited to medium work in an environment with no more than moderate noise (among other restrictions). R. 798–800. According to the vocational expert, no jobs would be available if the person was limited to a quiet work environment. R. 801.

Because the vocational expert's testimony appeared to conflict with information in the *Dictionary of Occupational Titles* (*DOT*) and its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (*SCO*), the ALJ submitted several interrogatories to the expert. *See* R. 947–50. The *SCO* rates the noise intensity level to which a worker is exposed in the job environment on a five-point scale: (1) Very Quiet; (2) Quiet; (3) Moderate; (4) Loud; and (5) Very Loud. *See* U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles, app. D, D-2 (4th rev. ed. 1993), *available at* https://www.lb7.uscourts.gov/documents/16-692URL12SelectedCharacteristics.pdf. The vocational expert clarified that the hypothetical person described at the hearing could not work as a dishwasher or a hand packager because those jobs involved exposure to loud noise, while the hypothetical limited the person to moderate noise. *See* R. 953–56. However, according to the vocational expert, that person

could work as a laundry laborer (moderate noise); a cleaner, hospital (quiet noise), and a food service worker, hospital (moderate noise).[2]

At Grosenick's request, the ALJ held a follow-up hearing in July 2021. *See* R. 762–74. The vocational expert testified that the *SCO* classified the hospital cleaner job as involving a quiet work environment, and he agreed with that classification. R. 770–71. According to the vocational expert, that job involved cleaning floors, hallways, and patient rooms. R. 772.

The ALJ issued a second unfavorable decision in September 2021. *See* R. 720–52. He considered the disability application under 20 C.F.R. § 404.1520(a)(4), which sets forth a five-step process for evaluating DIB claims. Relevant here, the ALJ determined that, through the date last insured, Grosenick had the residual functional capacity—that is, his maximum capabilities despite his limitations, *see* 20 C.F.R. § 404.1545(a)—to perform a reduced range of medium work. R. 730–31. The ALJ found that Grosenick could tolerate moderate noise in a work environment, must avoid exposure to extreme cold and work outdoors, was limited to occasional communication by phone, and could tolerate occasional exposure to vibration. With respect to mental abilities, the ALJ found that Grosenick could perform simple and routine tasks, could maintain attention and concentration for two-hour segments, could make simple work-related decisions, could tolerate occasional changes in a routine work setting, and could occasionally interact with the public.

In assessing that RFC, the ALJ considered Grosenick's subjective allegations about his impairments, the medical evidence, the prior administrative medical findings, and the medical

---

[2] The *SOC* provides illustrative examples for each noise intensity level. Environments with "Quiet" noise include libraries, many private offices, funeral receptions, golf courses, and art museums. Business offices where typewriters are used, department stores, grocery stores, light traffic, and fast-food restaurants at off-hours are examples of environments with "Moderate" noise. *See* Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles, app. D, D-2.

opinion evidence. *See* R. 730–42. The ALJ determined that Grosenick's medically determinable impairments could reasonably be expected to cause his alleged symptoms. However, according to the ALJ, Grosenick's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 731–35. The ALJ rejected the state-agency reviewing physicians' findings that Grosenick should be in a noise-free work environment. R. 735–36. Similarly, the ALJ rejected the opinions of Grosenick's primary mental health treatment provider, Teresa Grimes (PA-C), who opined that Grosenick had significant functional limitations. R. 739–42.

The ALJ determined at step five that there were jobs that existed in significant numbers in the national economy that Grosenick could perform. R. 743–44. Relying on the vocational expert's testimony and interrogatory responses, the ALJ listed three examples: production inspector, laundry laborer, and hospital cleaner. Based on that finding, the ALJ determined that Grosenick was not disabled at any time from his alleged onset date (July 24, 2015) through the date last insured (December 31, 2017). R. 744.

The ALJ's 2021 decision became the final decision of the Commissioner after remand because Grosenick did not file written exceptions and the Appeals Council did not assume jurisdiction over the case. *See* 20 C.F.R. §§ 404.955, 404.984.

In November 2021, Grosenick filed this action seeking judicial review of the Commissioner's decision denying his claim for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3, 4, 5. Grosenick filed a brief in support of his disability claim, ECF No. 14;

Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, filed a brief in support of the ALJ's decision, ECF No. 21; and Grosenick filed a reply brief, ECF No. 22.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse the Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "When reviewing the record, this court may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, I must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

The ALJ determined that Grosenick was not disabled because he could perform a significant number of jobs at the medium exertional level that involved (1) no more than moderate noise, (2) no exposure to extreme cold, (3) no working outdoors, (4) no more than limited communication by phone, and (4) other mental limitations. Grosenick contends that substantial evidence does not support the assessed RFC because the ALJ failed to properly address the prior administrative medical findings of the state-agency reviewing physicians and the medical opinions of his treating psychiatric provider, Ms. Grimes.

Because Grosenick applied for disability benefits on or after March 27, 2017, the ALJ applied the new social security regulations for evaluating medical opinions and prior administrative medical findings. *See* R. 731 (citing 20 C.F.R. § 404.1520c). Under the new regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of all medical opinions and prior administrative medical findings in the record using five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *See* 20 C.F.R. § 404.1520c(c).

Although an ALJ may consider all five factors, "the most important factors" are supportability and consistency. 20 C.F.R. § 404.1520c(a), (b)(2). The supportability factor focuses on what the source brought forth to support his or her findings. 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or

9

prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). The consistency factor, on the other hand, compares the source's findings to evidence from other sources. 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). The ALJ must explain in his decision how he considered the supportability and consistency factors for each medical opinion and prior administrative medical finding in the record. § 404.1520c(b)(2). The ALJ may, but doesn't need to, explain how he considered the other three factors. *Id.*

The state-agency reviewing physicians found that Grosenick could perform medium work in a noise-free environment. As support, they noted that Grosenick reported his symptoms worsened with exposure to noise. The ALJ found the reviewing physicians' noise restriction unpersuasive. According to the ALJ, that restriction was inconsistent with other evidence in the record, including reports of improved symptoms on medication; Grosenick's ability to engage with his providers without noted difficulty; Grosenick's reports of regularly communicating with his mother on the phone, completing household chores, being on his tractor, and plowing; and Grosenick's engagement in farm work.

The ALJ did not comply with social security regulations when evaluating the prior administrative medical findings of the state-agency reviewing physicians. First, the ALJ did not address the supportability of the reviewing physicians' findings. The ALJ did not mention the objective evidence or supporting explanations presented by the reviewing physicians. Nor did the ALJ explain how he considered the evidence or explanations in relation to the

10

persuasive of their findings, as required by § 404.1520c(b)(2). The failure to address the supportability of a prior administrative medical finding constitutes legal error. *See Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (remanding where ALJ failed to consider the consistency factor when evaluating a medical opinion); *see also Starman v. Kijakazi*, No. 2:20-cv-00035-SRC, 2021 WL 4459729, 2021 U.S. Dist. LEXIS 186850, at *11–14 (E.D. Mo. Sept. 29, 2021) (same but the supportability factor).

Second, the ALJ failed to explain how the evidence he cited was inconsistent with working in an environment free from noise. The ALJ cited several activities Grosenick engaged in that purportedly showed he could handle some noise. But the reviewing physicians did not find that Grosenick could never be around any noise. Rather, they found that he required a noise-free work environment. The ALJ did not explain how Grosenick's ability to tolerate moderate and predictable noise for minutes at a time (e.g., a phone call) was inconsistent with sustained exposure to that level of noise for eight hours each day, five days a week. In citing those activities, the ALJ failed to appreciate "[t]he critical differences between activities of daily living and activities in a full-time job"; "a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (explaining that "[t]he failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases") (listing cases).

Although Grosenick testified at the first administrative hearing that he had ringing in his ears every minute of every day, R. 46, he never claimed he was unable to be around any noise whatsoever. Grosenick asserted that his symptoms worsened with noise, physical

11

exertion, and cold weather, and he reported engaging in activities like household chores only when he felt up to it. *See* R. 46, 328–35. He also reported not having a schedule and complained about not being able to commit to activities because he didn't know how he'd feel on any given day. According to Grosenick, his symptoms were so bad certain days—for example, when the weather was cold or the barometric pressure dropped—that he wouldn't leave his house. Grosenick also stopped farming, the thing he loved most, because he couldn't handle the noise or the vibration. The ALJ, however, failed to consider the limited nature of Grosenick's daily activities. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (reversing an ALJ's decision because "[h]e failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week").

The ALJ's overreliance on Grosenick's activities of daily living also contaminated the only other alleged inconsistency he identified—Grosenick's reports of improved symptoms on medication. Earlier in his decision, the ALJ mentioned several times when Grosenick told providers that medication helped reduce or control his tinnitus symptoms. *See* R. 732–33 (citing Exhibits B4F/12, 153; B7F/6–8, 12, 14). However, Grosenick was not working at the time of all but one of those appointments. The fact that Grosenick was functioning well at home while mostly avoiding activities that exacerbated his symptoms says little about his ability to handle noise during a full-time job.

Moreover, one of the purported signs of improvement involved Grosenick unilaterally taking more than his maximum dosage; his provider responded by reducing his daily intake. *See* R. 581. Grosenick having good control of his symptoms at an unauthorized dosage of medication suggests that the prescribed dosage was actually ineffective at managing his

condition. Indeed, Grosenick testified that the beneficial effects of his medication were wearing off and that he sometimes took a couple extra pills, just to get by. *See* R. 46–47. Also, when citing Grosenick's supposed improvement with medication, the ALJ failed to consider remarks from providers that his condition was incurable and his prognosis poor. *See* R. 409 ("The prognosis for this individual is poor. He has few options regarding treatment for his health problems and he has not gained much symptom relief from his psychotropic medications."), 708 ("He has been troubled by severe, longstanding, lifelong tinnitus which unfortunately has become progressively worse."). The ALJ therefore did not build an accurate and logical bridge between the evidence and his conclusion that the reviewing physicians' noise restriction was inconsistent with other evidence in the record.

Kijakazi's harmless-error argument also misses the mark. She says that any error in evaluating the reviewing physicians' noise findings was harmless because the vocational expert indicated in response to the ALJ's interrogatories that a hypothetical person with Grosenick's vocational profile could work as a hospital cleaner if restricted to quiet work environment. But the reviewing physicians found that Grosenick should avoid *all exposure* to noise. That finding seems to correspond with a noise intensity level of "Very Quiet," and the vocational expert did not identify any available jobs involving a very quiet work environment the hypothetical person could perform.[3] Furthermore, at the first administrative hearing on remand, the vocational expert testified that all competitive employment would be eliminated if the hypothetical person was limited to a quiet work environment. R. 801. The interrogatory

---

[3] According to the *SCO*, examples of "Very Quiet" environments include isolation booths for hearing tests, deep sea diving, and forest trails. *See* Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles, app. D, D-2. The *SCO* lists several jobs fitting that noise classification level: quick sketch artist (DOT code 149.041-010), mortuary beautician (DOT code 339.361-010), embalmer apprentice (DOT code 338.371-010), embalmer (DOT code 338.371-014), and heat-treating bluer (DOT code 504.682-022). *See id.* at pt. A, 3, 13, 29, 174.

13

asked the vocational expert to consider an individual who could tolerate moderate noise. R. 954–56. Thus, he never had to reconcile that response with his previous testimony. The ALJ's error was not harmless.

In sum, the ALJ reversibly erred in evaluating the prior administrative medical findings of the state-agency reviewing physicians. The ALJ did not address the supportability of the reviewing physicians' findings, and substantial evidence does not support the consistency of those findings with other evidence. Grosenick argues that he would be disabled if the ALJ had properly adopted the reviewing physicians' noise restriction; thus, he asks me to reverse and remand with instructions to calculate benefits. "When a reviewing court remands to the Appeals Council, the ordinary remedy is a new hearing before an administrative law judge. In unusual cases, however, where the relevant factual issues have been resolved and the record requires a finding of disability, a court may order an award of benefits." *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018) (collecting cases).

This is not one of those unusual cases. Factual issues remain to be resolved in this case, namely the proper evaluation of the prior administrative medical findings. Moreover, the record does contain at least some evidence undermining Grosenick's disability claim, including the audiogram showing normal to borderline normal hearing, assessments showing no problems with normal conversation, the relatively normal mental status evaluations, and the evidence suggesting that Grosenick continued to farm after his alleged onset of disability. *See* R. 732–35. The appropriate remedy therefore is to remand, not to award benefits.

## CONCLUSION

For all the foregoing reasons, I find that the ALJ committed reversible error in evaluating the persuasiveness of the state-agency reviewing physicians' prior administrative

14

medical findings. Thus, I **REVERSE** the Social Security Commissioner's final decision and

**REMAND** this action to the Commissioner pursuant to sentence four of section 205(g) of

the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this

decision. On remand, the Commissioner should also address Grosenick's other claimed error

regarding the medical opinions of his treating mental health provider. The clerk of court shall

enter judgment accordingly.

      **SO ORDERED** this 13th day of March, 2023.


STEPHEN C. DRIES
United States Magistrate Judge